IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
AT CLARKSBURG

UNITED STATES OF AMERICA,

        Plaintiff,

V.                                     CRIMINAL ACTION NO. 1:18CR33

JAMES TIMOTHY COBB,

        Defendant.

## DEFENDANT'S MOTION TO SUPPRESS PHYSICAL EVIDENCE

Comes now, the Defendant, JAMES TIMOTHY COBB, through counsel L. Richard Walker, Esq. Assistant Federal Public Defender, and respectfully moves this Court, pursuant to Rule 12(b)(3)(C) of the Federal Rules of Criminal Procedure, to suppress evidence obtained on September 16, 2014, in violation of Mr. Cobb's constitutional rights under the Fourth Amendment.

## I.  INTRODUCTION

Police conducted an illegal search of Mr. Cobb's home in Marion County, West Virginia, based upon a woefully inadequate search warrant.  Police invaded and then illegally hunted for evidence and took Mr. Cobb's property, including a Gateway computer, in violation of his Fourth Amendment rights.  The warrant was so deficient and lacking in probable cause that the police should have known they were operating based upon a document that did not have the legitimate force of law.  The police could not have

1

believed there was probable cause to search Mr. Cobb's home and computer, despite that the local magistrate signed the warrants for both.  This Court should suppress all of the physical evidence taken from Mr. Cobb's home, including but not limited to the Gateway computer and the contents.

## II.  BACKGROUND

This is an alleged child pornography case.  Based upon the illegal search on September 16, 2014, the government sought a one-count indictment against Mr. Cobb. The grand jury returned an indictment on May 1, 2018, alleging the possession of child pornography in Marion County, West Virginia, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) & (b)(2).

The government's theory is that Mr. Cobb possessed the images of child pornography on a Gateway computer on or about September 7, 2014.  The computer was located in a room inside the home he shared with his parents in Marion County, West Virginia.

The investigation began on September 7, 2014, when Mr. Cobb was arrested for an altercation with his cousin, Paul Dean Wilson.  The two men became involved in a fight inside Mr. Cobb's home and it is alleged that Mr. Wilson died as a result.  Mr. Cobb was arrested for murder.  While he was in the jail, Mr. Cobb allegedly made statements on the phone to his parents suggesting that something private was kept on his computer.  The police listened to the recordings of these conversations and, without any additional

meaningful investigation, the officers sought a search warrant for the home.  The specific

facts rendered in the Search Warrant are as follows:

> On 09/07/14 at appox. 2355hrs Deputies responded to an
> altercation at (redacted).  Once on scene deputies advised that a
> male subject was unresponsive and started CPR.  Once the
> undersigned arrived on scene the male subject, identified as Paul
> Dean Wilson Jr., was pronounced dead by EMTs.   The
> undersigned then spoke with witnesses in the residence, James
> K. Cobb and Freda Cobb, who advised a physical altercation had
> taken place between James Timothy Cobb and his cousin Paul
> Dean Wilson Jr.  During the altercation between James T. Cobb
> and Wilson, James T. Cobb placed Wilson in a choke hold and
> placed his knee on his chest and pulled his head towards his
> knee.  When deputies arrived on scene James T. Cobb still had
> Wilson restrained and Wilson was unresponsive.  On 09/09/14
> statements were made by James Timothy Cobb requesting his
> parents, James Keith Cobb and Fred Cobb, have a subject clean
> off his laptop and pick up his cellular telephone from the jail.
> Also upon speaking with James K. Cobb he advised that Paul
> Dean Wilson Jr. had possession of a hand gun he called
> "Beretta" and started the altercation over the firearm not being
> where Mr. Wilson left the gun.  The above events occurred in
> Marion Co. WV.

On September 16, 2014, the local state magistrate signed the warrant and the

police executed the search warrant at Mr. Cobb's home.  They seized a Gateway laptop, at

least one firearm, and a variety of other items not seemingly associated with any crime,

much less a murder.

On September 23, 2014, the police sought another search warrant for the contents

of the Gateway computer.  The facts in support are:

> On September 07, 2014 the Marion County Sheriff's Dept.
> responded to a domestic altercation between James Timothy

3

Cobb and Paul Dean Wilson Jr. who are cousins both living with Cobb's parents at 123 High Point Dr. Fairmont in Marion Co. Wilson was pronounced dead at the scene. Cobb was arrested and charged with second degree murder. After new evidence was discovered the second degree murder charge was dismissed and Cobb was charged with first degree murder. During the investigation Cobb's phone calls from the jail have been monitored. During one conversation Cobb was heard to tell his father to get the computer out of his room and put it in his father's room. He said there are some things on there that need to be cleaned up before anyone sees them. On at least two other occasions he made reference to his parents about never letting anyone borrow your electronic equipment. On September 16, 2014 the Marion County Sheriff's Dept. served a search warrant on Cobb's residence at (redacted) and seized the Gateway laptop computer referenced by James Timothy Cobb.

Allegedly, the police identified over 600 images of child pornography on the Gateway computer. While this is incriminating, indeed, the search of Mr. Cobb's home and the seizure and subsequent search of his computer were illegal and unconstitutional. The facts in support of the warrants failed to establish a connection between Mr. Cobb's home, the computer and his alleged violent criminal activity on September 7, 2014. The search warrants were defectively lacking the necessary probable cause to support them. The warrants were so lacking in probable cause as to render official belief in its existence entirely unreasonable. As a result, the evidence obtained from Mr. Cobb's home and computer was seized in violation of his Fourth Amendment rights and it should be suppressed.

### III.  ARGUMENT

**A.      The Fourth Amendment Requirements Of A Lawful Search Warrant.**

The Fourth Amendment of the United States Constitution establishes the right of the people to be free from unreasonable searches and seizures.  U.S. Const. Amend. IV. In no place is the right to privacy stronger than a person's home:

> [t]he Fourth Amendment protects the individual's privacy in a variety of settings.  In none is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home - a zone that finds its roots in clear and specific constitutional terms: "The right of the people to be secure in their...houses...shall not be violated." That language unequivocally establishes the proposition that "[a]t the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable Government intrusion."   Silverman v. United States, 365 U.S. 505, 511 (1961).  In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant.

Payton v. New York, 445 U.S. 573, 589 (1980).

In order to be valid, the Fourth Amendment requires that warrants be based "upon probable cause, supported by oath or affirmation."  U.S. Const. Amend. IV.  There is probable cause to search a home if there is a fair probability that evidence of a crime is located within the residence.  See United States v. Murphy, 241 F.3d 447, 457 (2001). Whether probable cause exists must be determined under a totality of the circumstances. See Illinois v. Gates, 462 U.S. 213 (1983).

5

The test when reviewing an issued search warrant is whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant. Massachusetts v. Upton, 466 U.S. 727, 728 (1984). The reviewing court does not conduct a de novo review; rather, it limits itself to the information presented to the magistrate who issued the warrant. Id. Therefore, the Court should limit itself to the four corners of the Affidavit and Complaint for Search Warrant which contains the sworn facts presented to the magistrate.

In order to pass constitutional muster, there must be a sufficient nexus between the criminal conduct, the items to be seized, and the place to be searched. See United States v. Anderson, 851 F.2d 727 (4th Cir. 1988). The nexus may be inferred, based upon the unique circumstances of a case and need not rest on direct observations; such an inference, however, must be reasonable and "there still must be a 'substantial basis' to conclude that the instrumentalities of crime will be discovered on the searched premises." United States v. Lockett, 674 F.2d 843, 846 (11th Cir. 1982); see United States v. Williams, 974 F.2d 480, 481-82 (4th Cir. 1992)(totality of facts must establish a fair probability that drug paraphernalia will be found in drug dealer's motel room).

**B. The warrants for Cobb's home and computer lacked probable cause.**

Here, the facts in support of the search warrants do not establish any probability that any evidence associated with murder on September 7, 2014, would be found in Mr. Cobb's residence or on his computer. Clearly, the police fixated on the conversations between Mr. Cobb and his parents. The police  assumed the worst and they let the

6

context dictate their interpretation of the statements.  It is not suspicious that a person would not want the contents of a computer made public.  This does not indicate that evidence of a crime is on the computer.  It is very common for people to keep private information on computers and the overwhelming majority of it is entirely legitimate and lawful.  For example, it is very common for people to keep financial information, financial records, tax records, business records, medical records, mental health records, and attorney-client communications on their computers.  People keep journals, art, lyrics, poems, books and even plans for new inventions on computers.  This information too is very personal and of potential monetary value.  If these items are disclosed, it can create a personal and/or financial hardship for an individual, but in no way does this information suggests a crime took place.  What's more, it is important to keep in mind that the alleged murder here was not a financial crime and nothing corroborated the hunch that a computer had a role in the homicide offense.

### C.      The <u>Leon</u> Good Faith Exception Does Not Apply.

Even if a search warrant is defective, and a citizen's Fourth Amendment rights are violated, federal law provides support to the government.  The so-called "good faith exception" will salvage a defective warrant, unless the warrant was so bad that  "a reasonably well-trained officer . . . [should] have known that the search was illegal despite the magistrate's authorization."  <u>United States v. Leon</u>, 468 U.S. 897, 922 n. 23 (1984).  There are situations in which the Fourth Circuit will find that an officer's reliance on a search warrant was not reasonable, and the good faith exception would not

apply.  See United States v. Hyppolite, 65 F.3d 1151, 1156 (4th Cir. 1995).  The four

situations are as follows:  (1) when the warrant is based on an affidavit that contains

"knowing or reckless falsity"; (2) when the magistrate has simply acted as a "rubber

stamp" for the police; (3) when the affidavit does not "provide the magistrate with a

substantial basis for determining the existence of probable cause;" and (4) when the

warrant is so "facially deficient" that an officer could not reasonably rely upon it.  See

United States v. Wilhelm, 80 F.3d 116, 121 (citing Leon, at 923).  At least one of these

situations are present in this case such that the good faith exception should not apply.

Mr. Cobb contends that the facts in support of the search warrants were so lacking

in indicia of probable cause as to render official belief in its existence entirely

unreasonable.  In other words, this is a case of a "bare bones" affidavit, with a dearth of

facts from which a magistrate could determine probable cause.  See United States v.

Wilhelm, 80 F.3d 116 (4th Cir. 1996).  The search warrants contained no facts to support a

reasonable inference that relevant evidence about a murder could be found inside Mr.

Cobb's home.  The facts required speculation and conjecture in order for one to conclude

that Mr. Cobb's computer was somehow involved.

# IV.  CONCLUSION

Based upon the foregoing, Mr. Cobb respectfully requests that this Court hold a hearing.  Then the search warrant should be swiftly invalidated and this Court should suppress all evidence seized from the search of Mr. Cobb's residence and computer in September 2014.

Respectfully submitted,

**JAMES TIMOTHY COBB**

By:    <u>s/L. Richard Walker</u>
       WV State Bar No. 9580
       Attorney for Defendant
       230 West Pike Street, Suite 360
       Clarksburg, WV 26302
       Tel. 304-622-3823
       E-Mail: richard_walker@fd.org

## CERTIFICATION OF SERVICE

I certify that on July 6, 2018,  I have filed the foregoing with the Clerk's office using the electronic filing system which should automatically send an electronic copy to opposing counsel listed below:

**Sarah Wagner, Esq.**
**United States Attorney's Office**
**Clarksburg, WV 26301**

By:   s/ L. Richard Walker
WV State Bar No. 9580
Attorney for Defendant
Federal Public Defender Office
230 West Pike Street, Suite 360
Clarksburg, WV 26302
Tel. (304) 622-3823
Fax. (304) 622-4631
E-Mail: richard_walker@fd.org