**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA**

**UNITED STATES OF AMERICA,**

        Plaintiff,

v.                                                           Criminal No. 1:18-CR-00033

**JAMES TIMOTHY COBB,**

        Defendant.

**RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS
PHYSICAL EVIDENCE**

Now comes the United States of America, by William J. Powell, United States Attorney for the Northern District of West Virginia and Sarah E. Wagner, Assistant United States Attorney, and files this Response to the Defendant's Motion to Suppress Physical Evidence (dkt. no. 16). The affidavits at issue in this motion adequately support the state magistrates' probable cause findings because the information provided to the magistrates – that the defendant, James Timothy Cobb, was involved in an altercation at his home that lead to the victim's death and that he subsequently directed his parents on a recorded jail call to destroy electronic material contained on his laptop computer – provided a fair probability that evidence of his crime would be found at the home and on the computer. Moreover, the affidavits were sufficiently specific because they particularly itemized the things to be seized, notwithstanding that they included broad and inclusive conclusionary language. Even assuming that the warrants were insufficient, because they were sought and obtained by police in good faith, the evidence obtained during both searches is admissible. For these reasons, as set forth more fully below, Mr. Cobb's Motion should be denied.

## BACKGROUND

On September 7, 2014, James Timothy Cobb was involved in an altercation with his cousin and roommate, Paul Wilson, wherein Mr. Cobb placed Mr. Wilson in a chokehold and put his knee on Mr. Wilson's chest. Ex. 1, 09/16/2014 Affidavit and Complaint for Search Warrant ("Residence Warrant") at 1; Ex. 2, 09/23/2014 Affidavit and Complaint for Search Warrant ("Computer Warrant") at 1. Mr. Cobb's parents, James K. Cobb and Freda Cobb, witnessed the altercation. Id. Mr. Wilson subsequently died as a result of the altercation with Mr. Cobb. See id. During a 911 call made at the time of the altercation, James K. Cobb and Mrs. Cobb are heard telling Mr. Cobb to get off of Mr. Wilson, not to try to kill Mr. Wilson, and to stop what he was doing. Ex. 3, Sheriff's Report at 24.

During the murder investigation, Mr. Cobb's parents were interviewed about the altercation between him and Mr. Wilson and gave varying accounts about why the fight started. At one point, James K. Cobb told investigators that the fight started because Mr. Wilson threatened him and his son jumped in to protect him. Id. at 19. Mr. Cobb also told investigators that the fight started when Mr. Wilson's firearm was not in the place where he had left it. Ex. 1, Residence Warrant at 1, 3. Mrs. Cobb provided an entirely different account, stating that Mr. Wilson had punched her in the mouth the night he died because she yelled at him for being mean to his cat and that the altercation between Mr. Cobb and Mr. Wilson was a result of Mr. Cobb defending her. Ex. 3, Sheriff's Report at 20. However, Mrs. Cobb told Mr. Cobb during a recorded jail call that a neighbor told her to put cotton in her lip and take a picture, which she admitted doing. Id. at 21.

The 911 call and the differing accounts about what started the altercation between Mr. Cobb and Mr. Wilson placed Mr. Cobb's level of criminal intent, and therefore his possible

motivation for killing Mr. Wilson, squarely in question in the context of the criminal investigation.[1]

On September 9, 2014, in a recorded jail call, Mr. Cobb told his father to get his father's computer out of his (Cobb's) room and put it in his own room. Id. at 19. During other conversations with his parents, Mr. Cobb made reference to Mr. Wilson having borrowed the computer and instructed his parents not to let anyone borrow their electronic equipment. Id. at 22.

On September 16, 2014, Detective Jeannette Williamson obtained a search warrant for Mr. Cobb's residence to search for

> [a]ny and all firearms belong to Paul Dean Wilson Jr., any and all laptop computers, including tablets or desktop computers belonging to or operated by James Timothy Cobb, any and all cell phones belonging to or operated by James Timothy Cobb, and any and all evidence of a crime.

Ex. 1, Residence Warrant at 1. The probable cause statement was as follows:

> On [September 7, 2014,] at approx. 2355 hrs. [d]eputies responded to an altercation at 123 High Point Drive. Once on scene deputies advised that a male subject was unresponsive and started CPR. Once the undersigned arrived on scene the male subject, identified as Paul Dean Wilson Jr., was pronounced dead by EMTs. The undersigned then spoke with witnesses in the residence, James K. Cobb and Freda Cobb, who advised a physical altercation had taken place between James Timothy Cobb and his cousin Paul Dean Wilson Jr. During the altercation between James T. Cobb and Wilson, James T. Cobb placed Wilson in a choke hold and placed his knee on his chest and pulled his head towards his knee. When deputies arrived on scene James T. Cobb still had Wilson restrained and Wilson was unresponsive. On [September 9, 2014] statements were made by James Timothy Cobb requesting his parents, James Keith Cobb and Freda Cobb, have a subject clean off his laptop and pick up his cellular telephone from the jail. Also upon speaking with James K. Cobb he advised that Paul Dean Wilson had possession of a hand gun he called a "Beretta" and started the altercation over the firearm not being where Mr. Wilson left the gun. The above events occurred in Marion [County,] WV.

---

[1] Although Mr. Cobb was initially charged in state court with second degree murder for his role in Mr. Wilson's death, he was ultimately charged with first degree murder.

Id. at 1, 3.  The Residence Warrant was issued by state magistrate Melissa Pride Linger and was executed the same day. Various items, including a Gateway laptop computer with serial number NXY1UAA0032251C66F1601, six micro SD cards, and three firearms were seized. Id. at 4.

On September 23, 2014, Detective Kevin Alkire obtained a second warrant for the Gateway laptop computer authorizing a search for

> [a]ny material associated with the homicide of Paul Dean Wilson Jr. stored internally on a Gateway laptop computer serial # NXY1UAA0032251C66F1601 dark gray in color belonging to or used by James Timothy Cobb. Any and all evidence of any other crimes.

Ex. 2, Computer Warrant at 1. The probable cause statement was as follows:

> On September 7, 2014[,] the Marion County Sheriff's Dept. responded to a domestic altercation between James Timothy Cobb and Paul Dean Wilson Jr. who are cousins both living with Cobb's parents at 123 High Point Dr.[,] Fairmont in Marion Co. Wilson was pronounced dead at the scene. Cobb was arrested and charged with second degree murder. After new evidence was discovered the second degree murder charge was dismissed and Cobb was [c]harged with first degree murder. During the investigation Cobb's phone calls from the jail have been monitored. During one conversation Cobb was heard to tell his father to get the computer out of his room and put it in his father's room.  He said there are some things on there that need to be cleaned up before anyone sees them. On at least two other occasions he made reference to his parents about never letting anyone borrow your electronic equipment. On September 16, 2014[,] the Marion County Sheriff's Dept. served a search warrant on Cobb's residence at 123 High Point Dr. and seized the Gateway laptop computer reference by James Timothy Cobb.

Id. at 1-2.  The search warrant was issued by a second state magistrate, Cathy Reed-Vanata, and the hard drive from the Gateway laptop was analyzed by the West Virginia State Police Digital Forensics Unit.  Id. As a result of the search, and as alleged in the Indictment, 2,031 images of child pornography were discovered on the computer. Investigators scrutinized data obtained from the computer's browsing history which showed that at the dates and times that the child pornography found on Mr. Cobb's computer was downloaded, Mr. Cobb was logged in under his name and/or known aliases on Facebook and Yahoo from the same IP address.

Investigators obtained subsequent search warrants during the murder investigation. One of those additional warrants was sought by Detective Williamson on September 30, 2014 to permit a search of Mr. Cobb's cell phone, even though the Residence Warrant specifically referenced and authorized the search of the cell phone. Ex. 4, 9/30/2014 Affidavit and Complaint for Search Warrant ("Phone Warrant"). The probable cause statement was substantially similar to the prior warrants, except that it added information relating to the child pornography that was found on Mr. Cobb's computer. Id. The search warrant for the telephone was issued by a third state magistrate, Olivia A. Adams. Id.

Although it was not information that was before the state magistrate (because it was not known to investigators until approximately July or August 2015), a cellmate of Mr. Cobb later told investigators that Mr. Cobb told him that the reason he killed Mr. Wilson was that Mr. Wilson discovered child pornography on Mr. Cobb's computer and discovered that Mr. Cobb was bisexual.

## ARGUMENT

Mr. Cobb's Motion to Suppress should be denied because the search warrants at issue in the Motion were based upon probable cause and contained a sufficiently particular description of the items to be seized. The Fourth Amendment requires that warrants be issued by a neutral and detached magistrate, contain a particular description of the place to be searched and persons or things to be seized, and be based upon probable cause. U.S. Const. amend. IV; United States v. Clyburn, 24 F.3d 613 (4th Cir. 1994). A judicial officer may issue a search warrant only when he has probable cause to believe "there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238-239 (1983). In making this determination, the judicial officer must evaluate the "totality-of-the-circumstances"

and make a "practical, common-sense decision" to determine whether "the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information" support a finding of probable cause. Id.

A court reviewing the issuance of a search warrant must "simply assure that the magistrate had a 'substantial basis for . . . conclud[ing] that probable cause existed." Id. (quoting Jones v. United States, 362 U.S. 257, 271 (1960). In doing so, reviewing courts "must accord 'great deference' to the magistrate's assessment of the facts presented to him." United States v. Blackwood, 913 F.2d 139, 142 (4th Cir. 1990).

**A. The affidavits for the warrants for Mr. Cobb's home and computer adequately support the probable cause finding.**

In this case, the information presented to the state magistrate in both affidavits was that Mr. Cobb was involved in a physical altercation with Mr. Wilson at Mr. Cobb's residence that resulted in Mr. Wilson's death, and that in the days immediately following, Mr. Cobb asked his parents, in recorded jail calls, to have electronic materials contained on his laptop computer destroyed. Ex. 1, Residence Warrant; Ex. 2, Computer Warrant. This information, which included when and where the altercation occurred, exactly how the altercation occurred, the identity of the two eyewitnesses, as well as Mr. Cobb's jailhouse request to have information destroyed, adequately supported the state magistrate's finding of probable cause.

Information about a suspect's deceptive behavior, which would include efforts to conceal or destroy evidence, can contribute to a finding of probable cause for a search. See e.g., United States v. Blue, 808 F.3d 226, 235 (4th Cir. 2015). In Blue, the Fourth Circuit overturned two of the defendant's three narcotics convictions on the basis that there was insufficient evidence from which the jury found guilt. Id. In overturning the convictions, the Court observed that the district court had given great weight to the defendant's false denials of having been at a

particular apartment complex. Id. at 234-35. Although the Fourth Circuit ultimately held that the deceptive responses did not get the government "past the beyond-a-reasonable-doubt finish line," the Court explicitly affirmed that the defendant's "deceptive responses helped supply probable cause to get the warrant to search the apartment." Id. at 235. In the course of explaining that deceptive responses can contribute to a probable cause finding, the Court reiterated that the standard for probable cause "only requires a fair probability on which reasonable and prudent persons act." Id.

Here, Mr. Cobb's efforts to have his laptop cleaned are comparable to the Blue defendant's deceptive efforts. Mr. Cobb asked his parents to have someone wipe clean his laptop. In other words, he made a request to destroy materials. These facts, in addition to the detailed account from eyewitnesses of the killing that had taken place at Mr. Cobb's residence, contributed to the probable cause finding. From a totality of the circumstances presented to the issuing magistrate, that is, that Mr. Cobb had caused Mr. Wilson's death and that Mr. Cobb asked his parents to clean his computer, there was a "fair probability that . . . . evidence of a crime" would be found at the residence, where the murder was committed, and in Mr. Cobb's computer. Gates, 462 U.S. at 238. See also United States v. Whitner, 219 F.3d 289, 299 (3rd Cir. 2000) (suspect's attempt to conceal existence of an apartment and his association with it "logically suggests" that suspect was storing some evidence of illegal activity at apartment that he did not want agents to discover); United States v. Dessesaure, 429 F.3d 359 (1st Cir. 2005) (finding nexus to search defendant's home when defendant tried to lead police down false trail, denied that he lived where he lived and driving back to his home in such a way as to throw off anyone following him).

Mr. Cobb contends that law enforcement was unfairly "fixated" on the conversations between Mr. Cobb and his parents and that "[i]t is not suspicious that a person would not want the contents of a computer made public."  Motion to Suppress at 6-7.  Mr. Cobb's argument asks the state magistrate – and this Court – to abandon common sense and the use of reasonable inferences in making a probable cause determination.  Mr. Cobb did not ask his parents to make efforts to protect his financial or medical records or "art" from public disclosure by removing it from the computer and placing it in a more protected location.  Rather, he asked them to have "someone clean off his laptop," i.e., to destroy electronic material contained on the laptop.  Moreover, Mr. Cobb's call was made from inside a detention facility where he sat on charges of first degree murder which would expose him to serious time if convicted.  It was reasonable to conclude that his request that his parents "clean" his computer "before anyone sees" it indicated that evidence of the murder would be located in his home (where the murder took place) and on his computer (where he had asked his parents to destroy materials).

Mr. Cobb also reminds this Court that "the alleged murder here was not a financial crime and nothing corroborated the hunch that a computer had a role in the homicide offense."  Motion to Suppress at 7.  Agents investigating the murder did not have a "hunch" that the computer had a role in the homicide offense; they reasonably believed based on Mr. Cobb's efforts to have materials on the computer destroyed that the computer contained evidence of the murder, which could have, and ultimately did, include evidence that went to Mr. Cobb's motive for the killing, that is, the victim's discovery of Mr. Cobb's extensive collection of child pornography.

 **B. The affidavits for the warrants for Mr. Cobb's home and computer are sufficiently particularized because the language "any and all evidence of any other crimes" does not destroy the particularity of the warrant under Fourth Circuit law.**

The affidavits for warrants for Mr. Cobb's home and computer are sufficiently particularized because the "any and all evidence of any other crimes" language contained in the items to be seized description of both warrants is merely superfluous language that falls "within the practical margin of flexibility" that should be afforded warrants in a case of this type, where investigators were trying to determine a motive for Mr. Cobb's crime of murder.

The Fourth Circuit has recognized that "courts have routinely upheld the seizure of items described under a warrant's broad and inclusive language." See United States v. Phillips, 588 F.3d 218, 226 (4th Cir. 2009). This has long-been the law in this circuit. See United States v. Jacobs, 657 F.2d 49 (4th Cir. 1981).

In Jacobs, the Fourth Circuit reversed the district court's suppression of evidence, which had been for lack of specificity. Id. at 52. The government had obtained a warrant which authorized the seizure of financial records from the law office of the defendant, who was accused of conspiring with others to submit inflated medical bills for clients who had been involved in automobile accidents in order to obtain larger settlements. Id. at 2. The warrant authorized officers to search for a litany of specified documents (i.e., ledgers, journals, bank statements, etc.) which "show or tend to show evidence of violations of federal criminal law including but not limited to mail fraud in violation of 18 U.S.C. § 1341." Id. at 4-5. The district court suppressed the evidence after concluding that the words "but not limited to" destroyed the particularity of the warrant with respect to the crimes for which it was issued. Id. at 5.

In reversing the district court, the Fourth Circuit reasoned that in some cases, including the fraud case before it, a pragmatic, rather than "hypertechnical" approach to particularly inquiries is required:

> The degree of specificity required when describing the goods to be seized may necessarily vary according to the circumstances and type of items involved. . . .There is a

>practical margin of flexibility permitted by the constitutional requirement for particularity in the description of items to be seized.

Id. at 52 (quoting United States v. Torch, 609 F.2d 1088, 1090 (4th Cir. 1979)).  The Court concluded that "the challenged phrase should properly be treated as merely superfluous and falls within the 'practical margin of flexibility' afforded warrants in cases of this type." Id.  In doing so, the Court emphasized that a particularized itemization of things to be seized will not be defeated by "ambiguous conclusionary language."  Id.

In this case, the phrase "any and all evidence of any other crimes" is like the "but not limited to" language in Jacobs.  In both the Residence Warrant and the Computer Warrant, the agents specified the crime for which the warrant was issued – homicide in violation of W. Va. Code § 61-2-1 – and listed discrete items to be seized immediately preceding the "any and all evidence of any other crimes" language.  In the Residence Warrant, the language was as follows:

>Any and all firearms belonging to Paul Dean Wilson Jr., any and all laptop computers, including tablets or desktop computers belonging to or operated by James Timothy Cobb, any and all cell phones belonging to or operated by James Timothy Cobb, and any and all evidence of a crime.

Ex. 1, Residence Warrant at 1.  Likewise, in the Computer Warrant, the language was as follows:

>Any material associated with the homicide of Paul Dean Wilson Jr. stored internally on a Gateway laptop computer serial #NXY1UAA0032251C66F1601 dark gray in color belonging to or used by James Timothy Cobb. Any and all evidence of any other crimes.

Ex. 2, Computer Warrant at 1. In both warrants, the "any and all" language appears at the end of a list of specified and particularized items to be seized and because that particularity is present, the "any and all" language is "ambiguous conclusionary language" which does not defeat the requisite particularity.

Mr. Cobb's reliance on Andresen v. Maryland is misplaced.  See 427 U.S. 463 (1976).  There, the Supreme Court upheld language very similar to the language at issue in this case.  Id.

at 480, n. 10. The warrants issued for the defendant's law office included the language "other fruits, instrumentalities and evidence of crime at this (time) unknown" and the Court rejected the defendant's argument that that language rendered the warrant "general." Id. In so doing, the Court reasoned that the phrase appeared in each warrant at the end of a sentence containing a lengthy list of specific and particular items to be seized, all relating to a particular piece of real estate. Id. at 481-82. Just as in Andresen, the "any and all" language in the warrants at issue in this case appear at the end of a particularized itemization of things to be seized. Id.; see also Jacobs, 657 F.2d at 51 (rejecting district court's restrictive reading of Andresen).

Mr. Cobb's reliance on United States v. Bridges is also misplaced. See 344 F.3d 1010 (9th Cir. 2003). The court in Bridges found a search warrant which authorized federal officers to search for a various records and documents that were described after the words "includes but is not limited to" was overly broad because it was so expansive that the language authorized the government to seize nearly all of the documents it might have come across. Id. at 1016. Although it may well be the law in the Ninth Circuit that language such as "including but not limited to" which precedes a particularized itemization renders a warrant unconstitutionally broad, that view is squarely at odds with the Fourth Circuit's holding in Jacobs that a "defective qualifying phrase will not defeat a warrant that is otherwise sufficiently specific." Jacobs, 657 F.2d at 52.

**C. Even if this Court were to conclude that the affidavits were lacking in probable cause and not sufficiently particularized, the agents acted in good faith in relying on the warrants, even going so far as to seek subsequent warrants to search electronic items, and the items seized during the searches should not be excluded.**

Assuming for the sake of argument that the affidavits lacked probable cause or were not sufficiently particularized, this Court should not suppress the evidence obtained from Mr. Cobb's residence and computer because no less than three state magistrates approved the searches based

on substantially similar affidavits, and because agents sought a second search warrant for the computer (and a third search warrant for the phone) even though the initial search warrant specifically referenced the computer and authorized the search.

The exclusionary rule is a drastic remedy that exacts a high social cost. See United States v. Lough, 221 F.Supp. 3d 770 (N.D. W.V. 2016) (citing Nix v. Williams, 467 U.S. 431, 442 (1984)). "The principal cost of applying the rule is, of course, letting guilty and possibly dangerous defendants go free – something that offends basic concepts of the criminal justice system." Herring v. United States, 555 U.S. 135, 141 (2009) (quoting United States v. Leon, 468 U.S. 897, 908 (1984)). Defendants like Mr. Cobb who seek exclusion therefore face a "high obstacle" due to the "rule's costly toll upon truth-seeking and law enforcement objectives. Id. The paramount purpose of the exclusionary rule is deterrence and courts should only apply the exclusionary rule when "the benefits of deterrence [ ] outweigh the costs." Id. (citing Leon, 468 U.S. at 910).

To counteract the drastic nature of the exclusionary rule, the Supreme Court articulated a "good faith" exception in Leon. United States v. Davis, 690 F.3d 226, 251 (4th Cir. 2012). The good faith exception counsels that "[w]hen police act under a warrant that is invalid for lack of probable cause, the exclusionary rule does not apply if the police acted 'in objectively reasonable reliance' on the subsequently invalidated search warrant." Herring, 555 U.S. at 142 (quoting Leon, 468 U.S. at 922). Since Leon, the Supreme Court has broadened the reach of the good faith exception to include not just those cases where warrants in retrospect lacked probable cause. See Davis, 690 F.3d at 251.

The good faith exception is not without limits, and courts have identified four circumstances where it should not apply: where "1) the magistrate . . . was misled by information

in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth; 2) the issuing magistrate wholly abandoned his judicial role . . . ; 3) the affidavit supporting the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and 4) under the circumstances of the case the warrant is so facially deficient, i.e., in failing to particularize the place to be searched or the things to be seized that the executing officers cannot reasonably presume it to be valid." United States v. Doyle, 650 F.3d 460, 467 (4th Cir. 2011).

There are no circumstances in this case that warrant exclusion. Both officers who sought the warrants at issue acted responsibly in seeking the warrants, even going so far as to seek the second warrant for the computer, notwithstanding that the probable cause statement in the Residence Warrant specifically referenced the laptop, and the items to be seized included "laptop computers." See Ex. 1, Residence Warrant; Ex. 2, Computer Warrant. A third warrant based on substantially similar probable cause statement was also sought by agents and authorized by the magistrate. See Ex. 3, Phone Warrant.

Mr. Cobb's contention that application of the Leon good faith exception in this case is barred by the third and fourth circumstances – that is, that the affidavits are "so lacking in indicia of probable cause" and "so facially deficient" in failing to particularize the items to be seized that the executing officers could not reasonably believe it was valid – should be wholly rejected. Assuming for the sake of argument that the affidavits were thin on probable cause, they cannot be said to have been "so lacking in indicia of probable cause" that it would have been unreasonable for the officers to rely on them. The officers provided great detail that addressed the identity of the individuals involved in the altercation; the physical means by which Mr. Cobb caused Mr. Wilson's death (i.e., by placing Mr. Wilson in a chokehold, putting his knee on his

chest and pulling Mr. Wilson's head towards his knee); the date, time and location of the altercation; and the identity of the two eyewitnesses, Mr. Cobb's parents, to the altercation. This is not a situation in which the fact that a crime had occurred was in dispute, or the location in which the incident had occurred was in dispute. This was a situation in which the only disputed issue was Mr. Cobb's level of criminal intent and possible motivations for killing Mr. Wilson. If this was not enough detail to rise to the level of probable cause, it certainly cannot be fairly characterized as "so lacking in indicia of probable cause" as to make it unreasonable for the officers to believe that there was probable cause supporting the warrants.

Nor can it be said, in light of the Fourth Circuit's decision in Jacobs, that the affidavit was so facially deficient with respect to the particularity requirement so as to render the officers' reliance on the warrants invalid. Jacobs, 657 F.2d at 52 (holding that particularized itemization of things to be seized will not be defeated by "ambiguous conclusionary language").

## CONCLUSION

WHEREFORE, for the foregoing reasons, the government respectfully requests that the Defendant's Motion to Suppress Physical Evidence be denied.

Respectfully submitted,

WILLIAM J. POWELL

United States Attorney

By: /s/ Sarah E. Wagner
SARAH E. WAGNER
WV Bar No. 10239
Assistant United States Attorney
United States Attorney's Office
320 W. Pike Street, Suite 300
Clarksburg, WV 26301
Telephone: (304) 623-7030

Fax: (304) 623-7031
Email: sarah.e.wagner@usdoj.gov

**CERTIFICATE OF SERVICE**

    I, Sarah E. Wagner, Assistant United States Attorney for the Northern District of West Virginia, hereby certify I electronically filed this pleading with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

    L. Richard Walker
    Federal Public Defender Office
    230 West Pike Street, Suite 360
    Clarksburg, WV 26302

Dated: July 13, 2018

    By:  /s/ Sarah E. Wagner
    SARAH E. WAGNER
    WV Bar No. 10239
    Assistant United States Attorney
    United States Attorney's Office
    320 W. Pike Street, Suite 300
    Clarksburg, WV 26301
    Telephone: (304) 623-7030
    Fax: (304) 623-7031
    Email: sarah.e.wagner@usdoj.gov