**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG**

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

    **V.**                                     **Criminal Action No.: 1:18-CR-33
(JUDGE KEELEY)**

**JAMES TIMOTHY COBB,**

    **Defendant.**

**DEFENDANT'S RESPONSE TO THE GOVERNMENT'S OBJECTIONS
TO THE MAGISTRATE JUDGE'S REPORT & RECOMMENDATION**

The Defendant, JAMES TIMOTHY COBB, through counsel, L. Richard Walker, Assistant Federal Public Defender, submits this Response to the Government's Objections to the Report & Recommendation issued by United States Magistrate Judge Michael John Aloi. (Dkt. No. 36). Because the Government's objections are without merit, they should be overruled and the evidence in this case should be suppressed as recommended.

**I.    INTRODUCTION**

At issue is the search warrant issued on September 23, 2014, (Dkt. 19-2, "Computer Warrant") authorizing officers to search the entirety of Mr. Cobb's computer, without limitation. It was a general warrant and, therefore, prohibited by the Fourth Amendment. United States Magistrate Judge Michael John Aloi issued a Report and Recommendation ("the Report"), which found no legal basis to uphold the evidence, including alleged child pornography, seized pursuant to the Computer Warrant, noting it was "among the broadest and most general warrants" he has encountered. (Dkt. No. 36 at 35). Although the Government, though its objections, urges this Court to find otherwise, the Government's arguments are without merit.

First, the Government urges this Court to rely on United States v. Dickerson and United States v. Jacob to find that the Computer Warrant was sufficiently particular. However, Dickerson and Jacob are easily distinguishable and they have limited applicability to this case, if any. If this Court were to apply Dickerson and Jacob, both would tend to lead to the conclusion that the Computer Warrant was impermissibly broad.

Second, the Government urges this Court to find that the Leon good-faith exception applies, relying, again, largely on Dickerson. However, the Government misinterprets Dickerson. If applied, Dickerson would not support a finding of good faith. The Computer Warrant is the worst of the worst in terms of particularity. It lacked particularity so much so that no reasonably well-trained officer could have relied upon it in good faith.

Third, for the first time, in its objections, the Government makes the argument that this Court should find there was an independent lawful basis for the evidence discovered, and, in turn, grounds to apply the inevitable discovery doctrine. However, the "source" was a jailhouse informant who surfaced months after the search of Mr. Cobb's computer, presumably looking for a personal benefit. The information offered by the jailhouse informant cannot be severed from the impermissible search. Based upon information and belief, it is decidedly *dependent* upon the search and the inevitable discovery doctrine cannot support inclusion of the evidence.

The Government's three objections and the accompanying arguments are not persuasive, as explained in greater detail below. The Report's conclusion is correct. Accordingly, this Court should overrule the Government's objections and issue an Order suppressing all evidence seized from Mr. Cobb's computer, including the alleged child pornography.

## II. LEGAL ARGUMENT

### A. Dickerson does not support a finding of sufficient particularity; rather, it counsels *against* that result.

The Report found that the Computer Warrant lacked particularity because the broad language of the warrant placed no limits on the officers' discretion as to the search – limits that were plainly warranted by the information known by investigating officers at the time of application. (Dkt. No. 36 at 16).

In its objections, the Government argues this conclusion was incorrect because United States v. Dickerson, 168 F.3d 667 (4th Cir. 1999), *rev'd on other grounds by* Dickerson v. United States, 530 U.S. 428, 120 S.Ct. 2326 (2000), requires only that the warrant identify a "specific illegal activity," satisfied here -- the argument goes -- by the warrant's mention of "the homicide of Paul Dean Wilson, Jr." (Dkt. No. 41 at 1-2). This is a simplistic and highly selective representation of Dickerson as applied to this case. In actuality, the applicability of Dickerson to this case is very limited, and, if anything, that case directs the opposite result.

Dickerson is an eighteen-year-old case pertaining to *physical evidence* of the crime of *robbery,* which is vastly different than *digital evidence* of *motive* for a homicide. In essence, to rely on Dickerson is to ignore subsequent cautions that distinguish digital data from physical evidence.[1] And recent cases in this district and within this circuit concerning warrants authorizing the seizure of digital evidence do not even mention Dickerson. [2]

---

[1] See United States v. Grinder, Criminal No. CCB-17-226, 2018 WL 2943235 (D.Md., Jun. 12, 2018) (noting that serious privacy concerns mandate that "traditional Fourth Amendment doctrines . . . [be] applied differently to digital devices.").

[2] See Grinder, supra, and United States v. Will, Criminal No. 5:15-CR-6, 2015 WL 3822599 (N.D.W.Va. Jun. 19, 2015), noting that Williams is the relevant Fourth Circuit case for search warrants pertaining to digital evidence.

Arguably, there is some similarity between the language of the <u>Dickerson</u> warrant and the language of the Computer Warrant. Based upon a superficial review, <u>Dickerson</u> might seem to support the Government's position. However, a careful reading of <u>Dickerson</u> reveals that it is materially distinct.

The warrant in <u>Dickerson</u> authorized the search and seizure of "evidence of the crime of bank robbery." 166. F.3d at 694. The Fourth Circuit noted that "the test for the necessary particularity of a search warrant is [] 'pragmatic, [and] the degree of specificity required may *necessarily vary according to the circumstances and type of items involved.*'" <u>Id.</u> at 693-94 (quoting <u>United States v. Torch</u>, 609 F.2d 1088, 1090 (4th Cir. 1979) (emphasis added)). Considering the "practical margin of flexibility," the <u>Dickerson</u> court reasoned that:

> As explained by the Second Circuit in <u>George</u>, a warrant authorizing a search for evidence relating to "a broad criminal statute or general criminal activity" such as "wire fraud," "fraud," "conspiracy," or "tax evasion," is overbroad because it "provides no readily ascertainable guidelines for executing officers as to what items to seize." In contrast, a warrant authorizing a search for evidence relating to "a specific illegal activity," such as "narcotics," or "theft of fur coats," is sufficiently particular . . .

because, in those cases, the evidence would be "reasonably subject to identification," and the officers executing the search could readily "identify the property sought with reasonable certainty." 166 F.3d at 694. Thus, warrants identifying "specific illegal activity" can be sufficiently definite on that basis alone. <u>Id.</u>

Next, in considering whether "the crime of bank robbery" was general or specific criminal activity, the Fourth Circuit reasoned that the crime of bank robbery "tends to generate quite distinctive evidence, *e.g.*, guns, masks, bait money, dye-stained bills and clothes, carrying bags." <u>Id.</u> at 693. The evidence seized from Dickerson's apartment reflected those items: "a silver .45 caliber handgun, dye-stained money, a bait bill from another robbery, ammunition, masks, and

4

latex gloves." Id. at 694. As a result, the Fourth Circuit concluded that "the nature of a bank robbery is such that the evidence thereof is reasonably subject to identification" and for that specific reason, a warrant authorizing the search and seizure of "evidence of the crime of bank robbery" was sufficiently particular to limit officers' discretion in executing it.

Such is *not* the case here. Unlike evidence of a bank robbery, evidence of homicide varies widely from case to case, and does not consist of a set of items that are consistent across homicides. As a result, "evidence of the crime of homicide," in stark contrast to "evidence of the crime of bank robbery," cannot convey a reasonable understanding in the minds of executing officers as to what is reasonably authorized and what is not.

Likewise, evidence of homicide is distinct from the other examples of other crimes conveying "specific illegal activity" cited illustratively from George in Dickerson. Id. at 694. "Narcotics" and "theft of fur coats" both readily convey precisely what evidence is being sought – controlled substances and fur coats, respectively – leaving no ambiguity or discretion to executing officers. In contrast, "evidence of the crime of homicide" plainly does not identify "specific illegal activity," because it – unlike robbery – does not convey what is reasonably authorized by merely stating the crime itself.

Most importantly, even with the benefits of hindsight, when given the opportunity, Sgt. Alkire, the officer who conducted the search pursuant to the Computer Warrant, could not provide any explanation as to why he was looking at image files on Cobb's computer,[3] or how images

---

[3] Although the Report fairly considers that "few people keep documents of their criminal transactions in a folder marked 'crime records,'" it properly distinguishes such instances from the facts here. (Dkt. No. 36 at 21). That is, in some circumstances, the technological sophistication of a defendant may justify searching other types of files, in case relevant files may have been "disguised" as other file types. See United States v. Gray, 78 F.Supp.2d 524, 529 (E.D. Va. 1999) (finding review of image files within the scope of a warrant authorizing search and seizure of evidence that would not ordinarily be contained in image files, when agent conducting *proper, forensic* evaluation of a computer "knew from his experience that *computer hackers* often intentionally mislabel files," given their skill at manipulating computer files) (emphasis added). None of those considerations apply to Mr. Cobb. There was no evidence adduced at the hearing suggesting that Mr. Cobb possessed any sophistication whatsoever. The search here was not a proper

5

might in any way relate to the homicide. Sgt. Alkire admitted at the hearing on the motion to suppress, on July 19, 2018, that he did not begin his search with any of the types of files in particular for any reason:

> Q: Okay. So what was your – like I said, what was your – what was your method when you sat down to search the computer? How were you going to go through it? What were you going to look for first? What were you going to look for second?
>
> A: Photographs and files were mainly what I was looking for.
>
> Q: Okay.
>
> A: Any kind of searches. You know, references to suffocation or anything like that . . .
>
> Q: Okay. So you were looking for information about how to strangle someone or how to kill someone, right?
>
> A: Yes.
>
> Q: What else – what else were you looking for? What else did you have in mind?
>
> A: That's basically it. I mean, we were looking for anything that might be associated with a motive . . . [or] that homicide.
>
> Q: All right. It's interesting you say "pictures and files." What was it about pictures? I mean, did you – did you think there might be some child pornography on this computer?
>
> A: No, I didn't have any inclination that there was.
>
> Q: But just by going through the files you encountered that?
>
> A: Yes.
>
> Q: All right. Pictures, files. Did you check the search history of the computer?

---

forensic evaluation by a trained professional, but rather a fishing expedition by an untrained officer. It was, therefore, proper for the Report to compare the Fourth Circuit case on point for *this particular issue,* Arkansas Chronicle v. Murphy, 183 Fed. App'x 300 (4th Cir. 2006), rather than relying on Dickerson, which contemplated *none* of these relevant and contemporary issues.

>   A:  I didn't get that far.
>
>   Q:  Okay. Did you search emails?
>
>   A:  Didn't get that far.
>
>   Q:  Okay. Well, why not? I mean, what was holding you back from looking at that –
>
>   A:  Nothing. I just didn't get that far. I started clicking on some icons and the pictures came up and they were just there.

(Hr'g. Tr. at 28-30).

Moreover, Sgt. Alkire admitted that he had absolutely no training or experience as to how to conduct a forensic evaluation of a computer, which is how such evidence could have properly been reviewed. (Hr'g. Tr. at 18, Jul. 19, 2018). Sgt. Alkire was only trained on how to seize, transport, and store computers *until* they arrived at a lab, where trained technicians conducted forensic evaluations. He admitted he had never conducted a search of this type before, had no plan for how to identify relevant files, and just started randomly pulling up files and clicking on some icons. For these reasons, Sgt. Alkire's knowledge or experience do not support a finding, as in Dickerson, that under the language of the Computer Warrant, Sgt. Alkire reasonably understood the boundaries of the authorization. He did not. He believed he was authorized to look at everything and he proceeded accordingly.

In summary, the Dickerson court found the warrant language "evidence of a bank robbery" sufficiently particular *only* because (1) the evidence that could relate to bank robbery comprises a set of distinctive physical items that are common to robberies, (2) the lead agent executing the search was intimately familiar with robbery investigations and, as a result, (3) it was reasonably clear to the searching officer what he was authorized to look for despite the vague, nonspecific

wording on the warrant. None of those three things are true here. Thus, the facts and rationales of Dickerson are so opposite from the facts here that Dickerson supports suppression.

By contrast, the Fourth Circuit case most relevant to warrants authorizing search and seizure of digital, documentary evidence is United States v. Williams, 592 F.3d 511 (4th Cir. 2010), which the Report discussed at length. (Dkt. No. 36 at 21-24). There, while searching Williams' computer for evidence of the crime of "harassment by computer," in violation of Va. Code. Ann. §§ 18.2-152.7:1, pursuant to a search warrant, law enforcement officers found digital photos of child pornography. Id. at 520. Williams moved to suppress the child pornography on the grounds that the warrant did not "authorize[] officers to view *each* file on the computer, but rather [] authorized a search of *only those files* in his computer that related to [harassment by computer]." Id. The district court denied the motion and Williams appealed.

On appeal, the Fourth Circuit affirmed the denial of the motion to suppress, reasoning that because the crime of harassment by computer *by definition* requires use of a "computer or computer network," officers were authorized to review Williams' computer files generally in order to locate relevant files. The fact that evidence of the crimes of harassment by computer and possession of child pornography are both stored in the same location – within computer files – "does not preclude [the] seizure" of one found while lawfully searching for the other. Id. at 520-21.

Here, on the other hand, the crime of homicide in no way includes *by definition* evidence stored on a computer. No element of the various homicide crimes in West Virginia requires use or possession of a computer. Therefore, Williams is distinct from this case, and undersigned counsel believes it counsels that the evidence should be suppressed. That is, the holding in Williams depended on the fact that the crime Williams was charged with, harassment *by computer*,

8

by nature required evidence that *must* be found within his computer files.  Id. at 520-21.  That is emphatically not the case with evidence of the crime of *homicide*.

> **B.** **Jacob does not direct the upholding of search warrants that wholly lack any "particularized itemization of things to be seized;" it only upholds those that contain a particularized itemization, which is not the case with the Computer Warrant in this case.**

The Government argues that United States v. Jacob, 657 F.2d 49 (4th Cir. 1981), instructs that a catchall phrase such as "but not limited to" will not defeat a "particularized itemization of things to be seized."  (Dkt. No. 41 at 14).  While this is an accurate statement of Jacob, it is of no use here since there is no "particularized itemization of things to be seized" to be found in the Computer Warrant.  Of course, the warrant here is spectacularly lacking any similar itemization.  Comparing the two, in Jacob, the warrant authorized the search and seizure of:

> ledgers, journals, bank statements, checks, cancelled or otherwise, check vouchers, check stubs, checkbooks, deposit tickets, savings account books, for escrow account, regular account and any and all other checking and savings bank accounts, settlement sheets and other records of settlement for the time period January 1, 1972 through December 31, 1977, which relate to:
>
> 1. Clients who were represented by Felix S. Jacob and treated by Dr. Julius C. Cluck, in connection with claims for bodily injuries arising out of automobile accidents.
>
> 2. Clients who were represented by Felix S. Jacob in connection with claims for bodily injuries arising out of automobile accidents and which claims were made against persons insured by:
>
>    a. The Nationwide Mutual Insurance company in which (X) acted as the adjuster for that company;
>
>    b. The Maryland Automobile Insurance Fund in which (Y) acted as the adjuster for that company; and
>
>    c. The Maryland Casualty Company in which (Z) acted as the adjuster for that company.

> Which ledgers, journals, bank statements, checks, cancelled or otherwise, check vouchers, check stubs, checkbooks, deposit tickets, savings account books, for escrow account, regular account and any and all other checking and savings bank accounts, settlement sheets and other records of settlement with respect to clients represented in connection with claims for bodily injury arising out of automobile accidents for the time period of January 1, 1972 through December 31, 1977, show or tend to show evidence of violations of federal criminal law including but not limited to mail fraud in violation of 18 U.S.C. § 1341.

Id. at 50-51. It was just four words – "but not limited to" – that were cause for concern. The defendant complained that their inclusion in an otherwise properly limiting description "failed to circumscribe the discretion of the executing officers." Id. at 50. The Fourth Circuit concluded that although the warrant authorized officers "to seize a wide variety of financial records," it also placed a series of appropriate limits on the searching officers' discretion – specifying records by treating doctor, insurance company, adjuster, claim type, and time period. Id. at 52. These terms limited discretion to only those client records relevant to the investigation. Id. Accordingly, the phrase "but not limited to," *when accompanying an otherwise thorough set of appropriate limits*, is "properly treated as merely superfluous and [] within the 'practical margin of flexibility' afforded warrants in cases *of this type*." Id. (emphasis added).

Of course, the Computer Warrant was emphatically *not* of that type. Rather, in stark contrast to the particularized itemization in Jacob, the Computer Warrant identified the search and seizure of:

> "[A]ny material associated with the homicide of Paul Dean Wilson Jr. stored internally [on Cobb's computer]. Any evidence of any other crimes."

(Dkt. No. 19-2 at 1). The Computer Warrant is thus so far removed from the highly particularized itemization of the warrant in Jacob, that Jacob could not possibly support inclusion.

10

    **C.**     **As to the good faith exception, <u>Dickerson</u> is misconstrued, as objectively the Computer Warrant would not have guided a reasonable officer as to what should have been authorized to search within the computer and the officer who conducted the search lacked the necessary background and experience to conduct the search appropriately.**

The Government argued that <u>Dickerson</u> addresses good faith it and should direct that the warrant be upheld regardless of a lack of particularity. (Dkt. No. 41 at 17). Once again, a close reading of <u>Dickerson</u> contradicts the Government's claims.

In its good-faith analysis, the <u>Dickerson</u> court considered two things: (1) objectively, "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization," and (2) and the subjective reasonableness of reliance given the knowledge of the searching officers.

As to the objective prong, the court's rationale in <u>Dickerson</u> was:

> In light of the totality of the circumstances, we conclude that the warrant in this case was not so facially deficient as to preclude reasonable reliance upon it [because] the warrant specified that the items to be seized consisted of evidence associated with bank robbery. Thus, it did not fail to provide the searching officers and guidance whatsoever as to the subject of the search.

<u>Id.</u> at 695. This holding was dependent upon the finding that "crime of a bank robbery" was sufficiently particular, which does not hold true here. As previously discussed at length, the facts and circumstances here negate each of the reasons applicable to the holding of specificity in <u>Dickerson</u>, and for those same reasons, the Computer Warrant cannot be said to "provide [Sgt. Alkire] with guidance [] as to the subject of the search." Given that "evidence of a homicide" is easily distinguished from "evidence of a bank robbery," it cannot be said that, under <u>Dickerson</u>, this Computer Warrant similarly provided the requisite guidance to satisfy good faith. It clearly did not because it was so utterly broad. To be sure, Sgt. Alkire admitted that he understood there

to *be no limits* to what he could search on Cobb's computer, based on the language of the Computer Warrant.

It should be noted that the focus of the objective inquiry is not what a reasonable officer would have believed, but specifically what a "*reasonably well-trained officer*" would have believed. There is no credible argument that a reasonably well-trained law enforcement officer today could believe (1) that when applying for a warrant, he may withhold from the issuing magistrate all of the information known to him at that time that would limit the scope of the search; or (2) that a search warrant may permissibly be the legal equivalent of a blank check. See Rhodes v. Ingram, 2015 WL 5023909, No. 7:13-CV-192, 9 (E.D.N.C., Aug. 25, 2015) ("any reasonable officer would have known in 2013 that it would have been unlawful for her to search outside of the one portion of the property to which consent was limited."). If Sgt. Alkire truly did not know that something was amiss here, then Sgt. Alkire was not appropriately trained.

As to the second, subjective prong, the Dickerson court found persuasive the fact that the lead agent executing the search for evidence of a bank robbery "was familiar not only with the specifics of the bank robbery in question, but perhaps as important, had been investigating bank robberies for seven years and was thus very familiar with the type of evidence to look for (e.g., guns, money, bait bills, dye-stained money and clothes, disguises, carrying bags, and gloves.)." Dickerson, 166 F.3d at 695.

That could not be farther from the case here. Sgt. Alkire admitted that he had "no clear understanding of why this altercation occurred," because he had heard "several" separate versions of events. (Hr'g. Tr. at 43, Jul. 19, 2018). Sgt. Alkire claimed that he used the "any and all evidence" language in the warrant application because he could not identify "[any]thing specific

that he was looking for" in Cobb's computer. (Hr'g. Tr. at 18, Jul. 19, 2018). He even admitted that "[he] wanted to look at everything that's in there." (Hr'g. Tr. at 18, Jul. 19, 2018).

Moreover, as discussed, Sgt. Alkire admitted that he had absolutely no training about or experience with how to conduct a forensic evaluation of a computer. (Hr'g. Tr. at 18, Jul. 19, 2018). Sgt. Alkire was only trained on how to seize, transport, and store computers *until* they arrived at a lab, where trained technicians conducted forensic evaluations. (Hr'g. Tr. at 26-27 (admitting he had never conducted a search of this type before, had no "plan" on how to identify relevant files, and just started randomly "pull[ing] up a couple files" and "clicking on some icons.")). So, nothing about Sgt. Alkire's knowledge or experience support a finding like in Dickerson that under the language of the Computer Warrant, Sgt. Alkire reasonably understood the boundaries of his authorization, as he believed he was authorized to look at everything and lacked the experience to understand how to properly go about it.

For all of these reasons, Dickerson cannot support a finding of good faith. As a result, again, it was appropriate for the Report to discuss cases more on point and more recent. Rightly, the Report relies upon United States v. Winn, 79 F. Supp.3d 904, 923-24 (S.D.Ill. 2015), which is by far the most analogous federal case identified by our extensive legal research.

In Winn, officers were investigating the crime of public indecency after an incident where, among other things, the defendant allegedly took pictures of teenage girls at a public pool. The officer drafted a search warrant for "any and all files" on the defendant's cell phone. These officers could have, but "chose not to, edit the [list] of items to be seized to eliminate categories of data that had no connection to the suspected crime." Id. at 923. The district court suppressed the evidence of alleged child pornography because it determined that "the warrant was overbroad in every respect and violated the Fourth Amendment." Id. at 922.

In Winn, as here, there was a lack of good faith and, therefore, the general warrant could not be salvaged. To begin, the reviewing judge "abandoned his judicial role" when he "signed off on a warrant despite the facially overbroad nature of the list of items to be seized." Id. at 924. The officers "chose not to incorporate any information that would have substantially clarified the description of the data to be seized so as to limit the invasion of [the defendant's] privacy." There was a "fail[ure] to tailor the warrant to the facts or the crime under investigation," and "no red flags were raised and no alarm bells sounded . . . by the fact that the police were seeking a warrant to rummage through every conceivable bit of data in [the defendant's] phone." Id. at 923-24.

> D. **Sgt. Alkire's brief interaction with prosecutor Pat Wilson regarding the Computer Warrant, fairly characterized, does *not* support a finding he acted in good faith.**

The Government argues that "the fact that Sgt. Alkire conferred with Pat Wilson, the state prosecutor, in obtaining the search warrants . . . is further, important evidence of Sgt. Alkire's good faith." (Dkt. No. 41 at 17-18). On the contrary, Sgt. Alkire's testimony at the hearing makes it abundantly clear that prosecutor Wilson's involvement in the drafting of the application for the Computer Warrant was minimal:

> Q: Did you consult with Pat Wilson before you presented this? Did you show him a copy of this, get him to clear it for you?
>
> A: I did not show him a copy, no. But, yes,
>
> Q: All right.
>
> A: I did confer with him.
>
> Q: In other words, you had a meeting with him or you had some discussion with him that there would be a search warrant for the contents of the computer?
>
> A: Yes.

14

> Q: All right. Did he give you any guidance there or he just said "Okay. Do it."?
>
> A: Yeah, pretty much – just "do it."

(Hr'g. Tr. at 24-25, Jul. 19, 2018). While the prosecutor may have been involved in the *investigation*, it is apparent that his involvement as to the *warrant* was merely to agree with Sgt. Alkire that there should be a search warrant for the contents of the computer. It is not proper to characterize Wilson as "involved" with the Computer Warrant itself. What happened here is distinct from the facts of United States v. Clutchette, 24 F.3d 577 (4th Cir. 1994), which the Government cites in support of a finding of good faith.

In Clutchette, while officers were in the midst of a stakeout, surveilling the residence of a fugitive, the officer in charge decided to get search warrants for two homes. However, the officers all believed that none of them could be spared from the mission to go obtain warrants from a magistrate judge. Id. So, the detective contacted the Assistant State's Attorney ("ASA") for legal guidance as to how to proceed in obtaining the warrants by telephone. The ASA consulted with other attorneys and concluded that the officers could apply for the warrants by telephone. The ASA conveyed to the detective that the procedure was "legal and feasible" and that it had been done before. Id. Accordingly, the ASA in Clutchette, unlike Wilson here, actually researched the issue and provided guidance to the detective as to how to go about applying for the warrants. The ASA in Clutchette also assured the detective that the warrants would be valid under these circumstances. When it ultimately turned out that the warrants were invalid because they were done over the phone, the Fourth Circuit applied the good-faith exception to evidence seized pursuant to the warrants because, under these circumstances, the officers' reliance on the warrants *was* objectively reasonable.

Here, Sgt. Alkire's testimony shows that Wilson had no involvement other than to say "do it" when he said he would obtain a warrant for the computer. There is, of course, nothing inherent in those two words that one could rely on in terms of how to draft the search warrant. Accordingly, Clutchette does not support a finding of good faith here on the basis of Wilson's minimal "involvement."

### E. The basis of William Amos' knowledge on this matter is not independent; as a result, Amos' tip cannot and does not support a theory of independent discovery.

Lastly, the Government argues, that despite any deficiency of the warrant, the evidence should not be suppressed due to the existence of an independent source of that information. (Dkt. No. 41 at 18). The Government argues that Mr. Cobb's cellmate at the regional jail independently told investigators on August 6, 2015, that "Wilson found the porn in the computer and was going to tell on him." (Hr'g. Tr. at 49-50). Of course, during the same hearing, Sgt. Alkire also admitted that to this day he does not know for sure *what* motivated the altercation between Cobb and Wilson and could only speculate. (Hr'g. Tr. at 34).

In any case, the Government's argument on this point fails. The alleged "independent source" of this information was William Amos, who was an inmate at the regional jail as well. Cobb and Amos shared a cell. Based upon information and belief, Cobb kept his belongings in the cell, including Cobb's *legal papers* pertaining to the murder case still pending against him at that time. Undersigned counsel is informed that Cobb's legal papers included information about the images found on his computer and that Amos read about the images in Cobb's legal papers. (Given that this issue did not arise prior to the hearing, Cobb did not endeavor to prove these facts, but he can). Thus, far from being an *independent* source, the information coming from Amos was

16

entirely *dependent* upon the evidence improperly obtained by Sgt. Alkire in violation of Cobb's Fourth Amendment rights.

### III. CONCLUSION

For the foregoing reasons, there is no merit to the Government's objections. Accordingly, this Court should overrule the Government's objections, and enter an Order suppressing all of the evidence seized from Mr. Cobb's Gateway Computer pursuant to the Computer Warrant.

Respectfully Submitted,

**JAMES TIMOTHY COBB**

By: s/ L. Richard Walker
WV State Bar No. 9580
Attorney for Defendant
230 West Pike Street, Suite 300
Clarksburg, WV 26302
Tel. 304-622-3823
Email: Richard_walker@fd.org

## CERTIFICATE OF SERVICE

I certify that on September 25, 2018, I filed the foregoing with the Clerk's office via the electronic filing system which should automatically send an electronic copy to opposing counsel listed below:

**Sarah E. Wagner, AUSA**
**United States Attorney's Office**
**320 W. Pike Street, Suite 300**
**Clarksburg, WV 26301**

By: s/ L. Richard Walker, AFPD
WV State Bar No. 9580
Attorney for Defendant
230 West Pike Street, Suite 300
Clarksburg, WV 26302
Tel. 304-622-3823
Email: Richard_walker@fd.org